UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 14-2269 JGB (SPx)** | Date | January 8, 2015 |
|---|---|---|---|
| Title | ***Billy Threadgill v. Mclane/Suneast, Inc., et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   Order (1) DENYING Plaintiff's Motion to Remand (Doc. No. 12); and (2) VACATING the January 12, 2015 Hearing (IN CHAMBERS)**

Before the Court is Defendant's Motion to Remand. (Doc. No. 12) The Court finds this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. After considering the papers timely filed in support of an in opposition to the motions, the Court DENIES the motion and VACATES the January 12, 2015 hearing.

## I.   BACKGROUND

Plaintiff Billy Threadgill ("Plaintiff") filed this action against his former employer Defendant Mclane/Suneast, Inc. ("Defendant") in state court on April 4, 2014. (Compl., Not. of Removal, Exh. A, Doc. No. 1.)

According to the Complaint, Defendant hired Plaintiff in March 2012 as a "Selector IV", a job that entailed selecting certain products in Defendant's distribution center for shipment. (Compl. ¶ 6.) Six months later, Defendant promoted Plaintiff to a new position, in which Plaintiff restocked products. (Compl. ¶ 7.) The Complaint alleges that Plaintiff's co-workers, jealous of his rapid promotion, began harassing him in various forms. (Compl. ¶ 8.) Plaintiff complained to his supervisor, but no action was taken. (Compl. ¶ 9.) Due to the workplace harassment, Plaintiff suffered increased stress and began experiencing depression. (Comp. ¶ 11.) After seeing a doctor, Plaintiff was placed on medical leave in December 2012. (Compl. ¶ 12.)

In January 2013, Plaintiff filed a claim for workers compensation and began receiving benefits. (Compl. ¶ 13.)  In February 2013, Plaintiff successfully requested an additional short term medical leave of absence.  (Compl. ¶ 15.)  While still on this absence, Plaintiff filed a workers compensation lawsuit.  (Compl. ¶ 16.)  After the leave expired, Plaintiff returned to work.  (Compl. ¶ 17.)  However, upon his return on March 18, 2014, Plaintiff was notified that the company had laid off thirty employees, and he was included in this group.  (Id.)  The Complaint alleges the mass layoffs were a fabrication; that Defendant in actuality only fired Plaintiff and one other employee, both of whom had been on medical leave.  (Id.)

The Complaint alleges that after being laid off, Plaintiff filed a claim for unemployment benefits. (Compl. ¶ 18.)  Defendant opposed this application, arguing that Plaintiff had voluntarily resigned.  (Id.)  After Plaintiff was awarded the benefits, Defendant appealed, and the Office of Appeals ruled in Plaintiff's favor.  (Id.)  Plaintiff prays for medical costs, lost wages and other employee benefits, emotional distress damages, statutory attorneys' fees, and punitive damages. (Compl., Prayer for Relief.)

Plaintiff brings his claims pursuant to the California Fair Employment and Housing Act ("FEHA").  The Complaint states claims for: (1) employment discrimination based on a disability or perceived disability in violation of FEHA, Cal. Gov't Code § 12940(a); (2) relation in violation of FEHA; (3) employment discrimination based on the failure to accommodate disability or perceived disability in violation of FEHA, Cal. Gov't Code § 12900 et seq.; (4) wrongful termination in violation of the public policies codified in FEHA §§ §12940(h) and 12945(a); and (5) failure to prevent discrimination, harassment, and retaliation in violation of FEHA, Cal. Gov't Code § 12900 et seq. (Compl., Not. of Removal, Exh. A, Doc. No. 1.)

This is Defendant's second attempt at removal in this case.  The Court previously remanded the case for lack of subject matter jurisdiction on September 16, 2014, as the Court found Defendant had failed to demonstrate that the amount in controversy exceeded $75,000.[1] Defendant's Notice of Removal explains that on September 18, 2014, after the action was remanded to State Court, Defendant served Plaintiff with a request for a Statement of Damages ("SOD").  (Not. of Removal ¶ 8.)  Defendant asserts Plaintiff's SOD establishes that the amount in controversy exceeds $75,000, and thus, the Court now has diversity jurisdiction.[2] (Id. ¶ 34.)

On December 5, 2014, Plaintiff filed a Motion to Remand.  ("Motion," Doc. No. 12.) Plaintiff argues that: (1) 28 U.S.C. § 1445(c) bars removal of this case, (2) Defendant has not shown the amount in controversy exceeds $75,000, and (3) Defendant has not shown diversity of citizenship (Motion at 2.)  Defendant opposed on December 22, 2014.  ("Opp'n," Doc. No. 13.)

---

[1] See Doc. No. 16 in Case No. 5:14-cv-01127-JGB (SPx)

[2] The removal statute provides that "if the case stated by the initial pleading is not removable, removal may be filed within 30 days after receipt by the defendant . . . of a copy of . . . other paper from which it may be first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  "Responses to discovery[] shall be treated as an 'other paper' under subsection (b)(3)." 28 U.S.C. § 1446(c)(3)(A).

## II. LEGAL STANDARD[3]

Removal jurisdiction is governed by statute. See 28 U.S.C. §1441. Any civil action brought in a State court, of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court of the United States for the district and division embracing the place where such action is pending, except otherwise expressly provided by Act of Congress. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332.

When reviewing a notice of removal, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006) (internal quotation marks omitted)).

### A. Non Removability Under 28 U.S.C. § 1445(c)

28 U.S.C. § 1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). Whether a claim arises under a state's workers' compensation law for the purposes of § 1445(c) is a question of federal law. See, e.g., Grubbs v. Gen. Elec. Credit Corp., 405 U.S. 699, 705, 92 S.Ct. 1344 (1972). For the purposes of § 1445(c), the term "arising under" has the same meaning as "arising under" in the context of federal question jurisdiction, 28 U.S.C. § 1331. See Morra v. Ryder Truck Rental, Inc., 2012 WL 486957 (E.D. Cal. Feb. 14, 2012); Sandoval v. Mercedes–Benz USA, LLC, 2011 WL 9369968 (C.D. Cal. Aug. 12, 2011).

### B. Amount in Controversy Requirement

"The general federal rule has long been to decide what the amount in controversy is from the complaint itself." Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961). Where removal is based on diversity jurisdiction under 28 U.S.C. § 1332(a) and it is unclear from the face of the complaint whether plaintiff meets the $75,000 amount in controversy requirement, "the defendant bears the burden of actually proving the facts to support jurisdiction, including the jurisdictional amount." Gaus, 980 F.2d at 566–67. The removing defendant must produce "evidence establishing that it is more likely than not that the amount in controversy exceeds [the jurisdictional amount]." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted).

The district court determines whether defendant has met this burden by first considering whether it is "facially apparent" from the complaint that the jurisdictional amount has been

---

[3] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

satisfied. See Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997). If the complaint does not clearly specify damages, the court may examine facts in the complaint and evidence submitted by the parties. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (per curium) (internal quotations and citation omitted).

## III. DISCUSSION

### A. Non Removability Under 28 U.S.C. § 1445(c)

Plaintiff's first ground for remand relies on 28 U.S.C. § 1445(c). ("§ 1445(c).") This statute proscribes the removal of actions that "arise under" state workmen's compensation laws. California's workmen's compensation act ("WCA") provides in the relevant part that "[i]t is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment," and that "[a]ny employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer ... is guilty of a misdemeanor." California Labor Code § 132a ("§ 132a").

Plaintiff contends that both his second cause of action, for retaliation, and his fourth cause of action, for violation of public policy, "arise under" § 132a and are therefore non-removable. (Motion at 8-15.)

The term "arising under" in the context of § 1445(c) has the same meaning as "arising under" in 28 U.S.C. § 1331, which governs federal-question jurisdiction. See, e.g., Reed v. Heil Co., 206 F.3d 1055, 1059 (11th Cir. 2000). In defining "arising under" for purposes of § 1331, the Ninth Circuit has explained:

> "[a] claim arises under federal law within § 1331 if it is apparent from the face of the complaint either that (1) a federal law creates the plaintiff's cause of action; or (2) if a state law creates the cause of action, a federal law that creates a cause of action is a necessary element of the plaintiff's claim."

Virgin v. County of San Luis Obispo, 201 F.3d 1141, 1142–43 (9th Cir. 2000) (per curiam). Therefore, for purposes of § 1445(c), Plaintiff's claim "arises under" California's workers' compensation laws if the workers' compensation laws create Plaintiff's cause of action or if it is necessary to interpret those laws to resolve Plaintiff's claim. See Hamblin v. Coinstar, Inc., 2007 WL 4181822, at * 1 (E.D. Cal. Nov. 21, 2007).

### 1. Plaintiff's second cause of action – retaliation

Plaintiff's second cause of action is for retaliation in violation of FEHA. (Compl. ¶¶ 30 36.) Plaintiff alleges that during his employment, "he engaged in the following legally protected activities: (a) Requested, and took medical leave and attempted to return to work once leave was over; (b) Made a claim for workers compensation benefits; and (c) Filed a workers compensation case." (Compl. ¶ 31.) The Complaint alleges that Defendant's decision to fire Plaintiff was motivated by Plaintiff's legally protected activities, and that this retaliation was a violation of

"the California Fair Employment and Housing Act Government Code § 12900 et seq." (Compl. ¶ 33.) Plaintiff does not allege a violation of § 132(a) under his second cause of action, nor does he even mention the section by name.

To prove his claim, Plaintiff will have to show a violation of FEHA, not § 132(a).[4] Therefore, § 132(a) does not create the cause of action under which Plaintiff sues. See Rhodes v. Costco Wholesale Corp., 2010 WL 744390, at *2 (S.D. Cal. Mar. 3, 2010) (addressing same issue, and finding "FEHA, and not California's workers' compensation laws, creates Plaintiff's cause of action.") The possibility of confusion in this case comes from the separate existence of a cause of action for retaliation under § 132a. However, this actually serves to underscore the Court's reasoning. Plaintiff does not bring his claims under § 132a, nor could he, because the Workers' Compensation Appeals Board has exclusive jurisdiction over such claims. Cal. Lab. Code § 5300; Perilllo v. Picco & Presley, 157 Cal. App. 4th 914, 929 (Ct. App. 2007.)

Furthermore, it would not be necessary to interpret § 132(a) to resolve Plaintiff's claim. Plaintiff alleges he engaged in protected activity, filing for worker's compensation benefits. He alleges the Defendant fired him because of this activity. These are the issues that would need to be resolved, not the intricacies of the worker's compensation law itself. The Court would not need to make determinations about whether Plaintiff's worker's compensation claim was valid, or paid out sufficiently, or paid in a timely manner. See Spearman v. Exxon Coal USA, Inc., 16 F.3d 722 (7th Cir. 1994) ("A claim of retaliatory discharge may be adjudicated without any inquiry into the meaning of the workers' compensation laws; the question for decision usually is the employer's motive for adverse action rather than the entitlement to compensation for injury on the job"); Rhodes, 2010 WL 744390, at * 2 (concluding that "California workers' compensation laws are not a necessary element of Plaintiff's FEHA retaliation claim.")

Plaintiff relies heavily on Jones v. Roadway Express, Inc., 931 F.2d 1086, 1092. (5th Cir. 1991). However, the Fifth Circuit based its reasoning on the retaliation statute's dependence on the workers compensation statute. The court stated "were it not for the workers' compensation laws, [the retaliatory discharge statute] would not exist." Id. 931 F.2d at 1092. This is not true in California, where the FEHA statue exists independently of California's workers' compensation scheme. FEHA is a broad civil rights statute that does not exist solely to safeguard the workers' compensation scheme.

Accordingly, the Court finds § 1445 does not preclude removal of Plaintiff's cause of action for retaliation.

---

[4] For a FEHA retaliation claim, the plaintiff must show that "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

### 2. Plaintiff's Fourth Cause of Action – Violation of Public Policy

Plaintiff's fourth cause of action is for wrongful termination in violation of public policy, also known as a <u>Tameny</u> claim.[5] (Compl. ¶¶ 45-52.) To bring a <u>Tameny</u> claim, a plaintiff must tether the public policy allegedly violated to some statutory or constitutional provision. <u>Green v. Ralee Eng'g Co.</u>, 19 Cal.4th 66, 79 (1998). Plaintiff contends that his <u>Tameny</u> claim is "partly based on Labor Code § 132a." (Motion at 15.) Plaintiff therefore contends that his claim is not subject to removal pursuant to § 1445(c). (<u>Id.</u> at 16.)

However, the Complaint does not invoke California's worker compensation laws as the "public policy" basis for his <u>Tameny</u> claim; rather, the Complaint alleges that Plaintiff's termination violated "prohibitions of retaliating against and terminating an employee based upon his disability and his exercise of and assertion of rights to take medical leave under FEHA." (<u>Id.</u> ¶ 47.) The Complaint alleges this behavior is against the public policy of preventing disability discrimination, as codified in FEHA §§ 12940(h) and 12945(a). (<u>Id.</u> ¶ 48.) Plaintiff's <u>Tameny</u> claim is devoid of any citation or reference to § 132a or California's WCA.

Furthermore, even if Plaintiff had properly pled a <u>Tameny</u> claim premised on § 132a, such a claim does not "arise under" California's workers' compensation laws. Although the Ninth Circuit has not addressed this issue directly, it has considered and rejected the related question of whether wrongful termination claims "arise under" the federal law on which they are premised for purposes of federal question jurisdiction. See <u>Campbell v. Aerospace Corporation</u>, 123 F.3d 1308 (9th Cir. 1997) (holding that a claim for wrongful termination based on the public policy expressed in the federal False Claims Act did not arise under federal law); <u>Rains v. Criterion Sys., Inc.</u>, 80 F.3d 339, 347 (1996) (invoking Title VII as the public policy violated by a wrongful discharge does not create federal-question jurisdiction). Moreover, other district courts that have examined the precise question at issue here have concluded that a <u>Tameny</u> claim based on § 132a does not arise under California's workers' compensation laws. See <u>Sandoval v. Mercedes-Benz USA</u>, LLC., 2011 WL 9369968, at *2 (C.D. Cal. Aug. 12, 2011) ("Plaintiff's <u>Tameny</u> claim no more arises under the workers' compensations laws than did Campbell's wrongful discharge claim arise under the [False Claims Act] . . . Moreover, California's workers' compensation laws are not a necessary element of the wrongful discharge claim and the Court will not be called upon to construe them."); <u>Thomas v. U.S. Foods, Inc.</u>, 2012 WL 5634847, at *3 (C.D. Cal. Nov. 14, 2012) ("California workers' compensation law does not create Plaintiff's cause of action nor is it a necessary element of Plaintiff's claim"); Ramirez v. Saia Inc., No. 2:14-CV-04590-ODW, 2014 WL 3928416, at *4 (C.D. Cal. Aug. 12, 2014) "The wrongful-discharge claim meets neither of the "arising under" prongs."

Accordingly, the Court finds § 1445 does not preclude removal of Plaintiff's <u>Tameny</u> claim.

---

[5] See <u>Tameny v. Atlantic Richfield Co.</u>, 27 Cal.3d 167 (1980)

**B. Amount in controversy**

Plaintiff also contends that Defendant has not shown that Plaintiff's damages exceed the jurisdictional limit. It is not facially apparent from the Complaint that the amount in controversy exceeds $75,000. Therefore, the Court must determine whether Defendants met their burden of proving by a preponderance of the evidence that the amount in controversy meets that jurisdictional threshold. See Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); see also Matheson, 319 F.3d at 1090 ("Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold.") (footnotes omitted).

To show the amount in controversy has been met, Defendant relies on Plaintiff's SOD. (Not. of Removal ¶ 34.) On September 18, 2014, Defendant served Plaintiff with a Request for Statement of Damages pursuant to California Code of Civil Procedure § 425.11. (Declaration of Sabrina Beldner ("Beldner Decl."), Doc. No. 5, ¶ 2.) Plaintiff responded on October 2, 2014. (Id. ¶ 2.) Plaintiff's SOD, which identifies Plaintiff's damages through October 2, 2014, states that Plaintiff's lost earnings total $46,360.00, Plaintiff's lost benefits total $16,288.51, and Plaintiff's attorneys' fees total $8,000.00. (Declaration of Sabrina Beldner (Id., Exh. 2.) Thus, as of October 2, Plaintiff sought at least $70,648.51 in damages.[6] Defendant removed the case on November 5, 2014. (Not. of Removal.) Thus, another month of lost benefits and lost earnings had accrued since the SOD, bringing the Plaintiff's claimed economic damages and attorneys' fees up to $73,945.80.[7] See Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 691–92 (9th Cir. 2006) (federal jurisdiction depends upon the circumstances that exist at the time of removal).

Plaintiff argues that Defendant failed to address the possibility of mitigation and offsets in its analysis of the potential value of Plaintiff's economic damages. (Motion at 7.) However, Plaintiff presents no evidence that he has mitigated his damages. Moreover, the inquiry in determining the amount in controversy focuses on the amount of relief that Plaintiff seeks, not what he may ultimately obtain. See Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008.) ("The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe."); Kenneth Rothschild Trust v. Morgan Stanley Dean Witter, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint.") Therefore, the

---

[6] Plaintiff does not contest that the SOD may serve as an admission of the damages sought.

[7] Plaintiff seeks damages that have accrued since his March 2013 termination. (Compl. ¶ 17.) Thus, at the time Plaintiff's SOD, nineteen months had passed since the termination, and the monthly rate for both employee benefits and lost wages can be calculated by dividing the total sought in the SOD by nineteen. This leads to employee benefits of $857.29 a month and lost wages of $2,440 a month. Adding one additional month of the benefits and lost wages to the total sought in the SOD ($70,648.51 + $857.29 + $2,440.00) gives a sum of $73,945.80.

Court finds that potential mitigation or offsets should not be included in the amount in controversy calculation here.

Defendant contends that this Plaintiff's economic damages, combined with the emotional distress and punitive damages Plaintiff also seeks, push the amount in controversy over the $75,000 threshold. The Court need not address this argument as Defendant has put forth other evidence sufficient to show the amount in controversy requirement is met. On November 6, 2014, Plaintiff served Defendant with an Offer to Compromise pursuant to California Code of Civil Procedure § 998. (Supplemental Declaration of Sabrina Beldner ("Beldner Supp. Decl.,") Doc. No. 13-2, ¶ 3.) Plaintiff offered to settle the case for $74,000. (Beldner Supp. Decl., Exh. 1.) "A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002).[8] Plaintiff's offer explicitly states that "each party shall bear its own costs and fees." (Beldner Supp. Decl. Exh. 1.) Plaintiff's settlement offer shows he estimates his damages, exclusive of attorneys' fees, to be $74,000. Plaintiff has stated that his attorneys' fees are at least $8,000.00, which leads to a combined amount in controversy of $82,000.

Accordingly, the Court finds that Defendant has shown, by a preponderance of the evidence, that the amount in controversy requirement for diversity jurisdiction is satisfied.

### C. Diversity of Citizenship

Finally, Plaintiff contends that diversity jurisdiction is lacking because Defendant has not adequately established that it is diverse from Plaintiff. Plaintiff argues that Defendant has failed to prove by competent evidence that Defendant is a citizen of Texas. (Motion at 16.) The parties do not dispute that Plaintiff is a citizen of California.

A corporation is deemed to be a citizen of the state of its incorporation and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). The Supreme Court has explained that a corporation's principal place of business is its "nerve center," i.e., "where the corporation's officers direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010).

Attached to its Opposition, Defendant provides the declaration of Mark Zwenerman. (Declaration of Mark Zwenerman ("Zwenerman Decl."), Doc. No. 13-3.) Mr. Zwenerman declares that Defendant is incorporated in Texas. (Id. ¶ 3.) Mr. Zwenerman also declares that all of Defendant's corporate directors and officers are located in Temple, Texas, at Defendant's corporate headquarters. (Id.) Mr. Zwenerman further declares that Defendant's core executive functions and major administrative operations, including its company-wide human resources management, are performed at the corporate headquarters. (Id.) This evidence is sufficient to establish that Defendant is more likely than not a citizen of Texas.

---

[8] Given Plaintiff's SOD and the circumstances of this case, there is no reason to suspect that Plaintiff's offer was not a reasonable estimate of his claim.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion. The January 12, 2015 hearing is VACATED.

**IT IS SO ORDERED.**